# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BAYOU INDUSTRIAL SALES, L.L.C.**                    **CIVIL ACTION**

**VERSUS**
                                                      **NO. 15-283-BAJ-RLB**
**PETRO-VALVE, INC.**

## ORDER

Before the Court is Petro-Valve, Inc.'s ("Petro-Valve") Motion to Compel (R. Doc. 35) filed on April 27, 2017. Petro-Valve seeks an order requiring supplemental responses to requests for production served on Bayou Industrial Sales, L.L.C. ("Bayou") on February 1, 2016 (R. Doc. 35-7), and Keith Foote and David Foote on June 7, 2016 (R. Doc. 35-2; R. Doc. 35-3). The Motion to Compel is opposed. (R. Doc. 43).

Also before the Court is Petro-Valve's Motion for Extension of Time to File Expert Reports (R. Doc. 36) filed on April 28, 2017. Petro-Valve seeks an order extending its deadline to provide expert reports to Bayou until 21 days after the Court rules on the pending Motion to Compel. The Motion for Extension of Time to File Expert Reports is opposed. (R. Doc. 42).

Because the foregoing motions involve related issues, the Court considers will consider them together.

## I.     Background

Petro-Valve is a distributor of industrial valves. Petro-Valve and Bayou entered into a Consulting Agreement with an effective date of April 21, 2014 for an "agreement term" of three years. (R. Doc. 1-2 at 7-8). Through the Consulting Agreement, Bayou agreed to perform certain "outside sales" for Petro-Valve in return for a "Base Payment" of $42,083.33 per month ($505,000.00 annually), predetermined expense reimbursements, and commissions.

At the time the parties entered into the Consulting Agreement, the sole members of Bayou were David Foote and Kevin Barre. (R. Doc. 15 at 3; *see* R. Doc. 15-1). On May 2, 2014, Bayou amended its Articles of Organization to identify its sole members as David Foote Consulting, LLC, Keith Foote, LLC, and Barre Industrial, LLC. (R. Doc. 15 at 3; *See* R. Doc. 15-1).

On September 29, 2014, a corporate representative of Petro-Valve notified David Foote and Keith Foote (collectively, "the Footes") that Petro-Valve was cancelling the Consulting Agreement effective that day. (R. Doc. 43-2). The corporate representative stated that the Consulting Agreement "included Kevin Barre and this agreement should have been cancelled when he departed." (R. Doc. 43-2). Furthermore, the corporate representative stated that a "new employment agreement" that the parties had been discussing would be effective that day upon cancellation of the Consulting Agreement and that the employment agreement would be provided to the Footes by the end of the day. (R. Doc. 43-2).

On October 6, 2014, the Footes entered into employment agreements with Petro-Valve providing them with respective annual salaries of $125,000 (David Foote) and $200,000 (Keith Foote) as Territory Sales Managers for Petro-Valve. (R. Doc. 14-1 at 1-8). The Footes also entered into Nondisclosure Agreements with Petro-Valve. (R. Doc. 14-1 at 9-16).

On March 17, 2015, Bayou again amended its Articles of Organization to identify its sole members as David Foote Consulting, LLC (the sole member of which is David Foote), Keith Foote, LLC (the sole member of which is Keith Foote). (R. Doc. 15 at 3; *See* R. Doc. 15-1).

On April 9, 2015, Bayou initiated the instant breach of contract action in state court. (R. Doc. 1-2 at 3-6, "Petition"). Bayou alleges that prior to cancellation of the Consulting Agreement, Petro-Valve made base payments to Bayou in the amount of $180,719,71. (Petition, ¶ 11). Bayou claims that it is owed $44,999.97 in base payments, as well as certain

commissions, prior to the cancellation of the Consulting Agreement. (Petition, ¶¶ 12-13). Bayou also claims that it is owed base payments in the amount of $1,289,280.32 that would have been payable from the date the Consulting Agreement was cancelled through the end of the three-year term of the contract. (Petition, ¶ 16). Finally, Bayou claims that it is entitled to an additional $252,499.98 in base payments that it was entitled to receive at the end of the three-year term of the contract if it did not engage in certain business activity for 6 months after the Consulting Agreement's expiration. (Petition, ¶¶ 17-18).

Petro-Valve removed the action on May 3, 2015. (R. Doc. 1).

On November 6, 2015, the Court entered into the record Petro-Valve's Amended Answer, Counterclaim, and Third Party Complaint. (R. Doc. 14). Among other affirmative defenses, Petro-Valve asserts that the Consulting Agreement was modified by the parties in light of Kevin Barre's departure from Bayou; that Petro-Valve had the right to terminate the Consulting Agreement; that the subsequent entry of employment agreements by Petro-Valve and the Footes constituted a novation of the Consulting Agreement; and that Bayou's claims are barred by fraud and/or fraud in the inducement. (R. Doc. 14 at 4-5).

In its counterclaims against Bayou and third-party demands against the Footes, Petro-Valve asserts that it hired Bayou and entered into the Consulting Agreement in reliance on representations that Bayou and the Footes "had the ability to bring in $15-$20 million a year in business from Louisiana customers." (R. Doc. 14 at 6). According to Petro-Valve, only after it opened a branch in Louisiana based on these representations did it became clear that neither Bayou nor the Footes had the ability to bring in $15-$20 million in business in Louisiana. (R. Doc. 14 at 7). Petro-Valve further allege that the Footes represented that "it was essential that they become employees of Petro-Valve so that they could have access to confidential customer information" not available to them under the Consulting Agreement. (R. Doc. 14 at 7). Petro-

Valve further represents that the Footes terminated their employment on or about April 9, 2015, and, in violation of their Nondisclosure Agreements, "downloaded and forwarded to their personal email addresses confidential and trade secret information of Petro-Valve in violation of their Nondisclosure Agreements." (R. Doc. 14 at 8). Petro-Valve brings causes of action against Bayou and/or the Footes for common law fraud, fraud in the inducement, breach of contract, theft and misappropriation of trade secrets, and conspiracy. (R. Doc. 14 at 8-10). Petro-Valve seeks recovery of exemplary damages and attorney's fees. (R. Doc. 14 at 11-12).

On February 1, 2016, Petro-Valve served requests for production on Bayou. (R. Doc. 35-7).

On February 25, 2016, the Footes filed a Counterclaim against Petro-Valve. (R. Doc. 25). The Footes allege that they are "owed sums by Petro-Valve, Inc. under the terms of their employment with Petro-Valve, Inc. in the form of salary, commissions, and paid vacation time." (R. Doc. 25 at 1). The Footes are demanding Petro-Valve "to pay all sums due and owning" by Petro-Valve, and for payment of penalties and attorney's fees as set forth in La. R.S. 23:632. (R. Doc. 25 at 2).

On March 17, 2016, Petro-Valve filed an Answer to the Footes' Counterclaim. (R. Doc. 29). Among other things, Petro-Valve raises the affirmative defendant that to the Footes are barred from recovery to the extent they "failed to focus 100% of their time and effort on Petro-Valve, or received income or compensation from Bayou Industrial Sales, LLC, or other company, while employed with Petro-Valve, their claims are barred by prior breach of their employment agreements." (R. Doc. 29 at 2).

On June 7, 2016, Petro-Valve served requests for production on Keith Foote and David Foote. (R. Doc. 35-2; R. Doc. 35-3).

On June 28, 2016, the Court entered a Joint Protective Order into the record. (R. Doc. 31). This protective order allows the parties to designate information as "confidential" prior to production and restricts the use of such confidential information.

On July 21, 2016, Bayou provided its initial objections and responses to Petro-Valve's requests for production. (R. Doc. 35-8).

On April 5, 2017, counsel held a telephone discovery conference regarding the responses provided by Bayou and the absence of any responses by the Footes. According to an e-mail memorializing the conference by defense counsel, Bayou agreed to produce documents responsive to Request Nos. 36-42, 45-53, 56, 70-76, 79-80, and 86 by April 20, 2017; Petro-Valve would file a motion to compel Bayou to respond to Request Nos. 26-28; and the Footes would provide responses to the outstanding discovery requests on or before April 20, 2017. (R. Doc. 35-6).

On April 20, 2017, Keith Foote and David Foote provided their initial objections and responses to Petro-Valve's requests for production. (R. Doc. 35-5).[1]

On April 21, 2017, Bayou provided supplemental responses to Petro-Valve's requests for production. (R. Doc. 35-9).

On April 27, 2017, the deadline for it to provide expert reports, Petro-Valve filed its Motion to Compel. (R. Doc. 35). Petro-Valve argues that because responses were not provided to the requests for production within the 30-day limit provided by Rule 34, all objections to the request for production are waived. In the alternative, Petro-Valve argues that the objections are without merit. Petro-Valve seeks recovery of fees associated in bringing the motion in the amount of $4,900. (R. Doc. 35-13).

---

[1] The Footes' counsel emailed the responses at 6:01 p.m. on April 19, 2017. (R. Doc. 43-6 at 1). The responses themselves are dated April 20, 2017.

On April 28, 2017, Petro-Valve filed its Motion for Extension of Time to File Expert Reports. (R. Doc. 36). In support of the motion, Petro-Valve asserts that until the Court rules upon the motion to compel, and it obtains the discovery sought, it "does not have sufficient information to provide to its expert so that he may render an opinion" on Petro-Valve's counterclaims and third party claims. (R. Doc. 36 at 2).

The current discovery deadline is July 14, 2017. (R. Doc. 48).

## II. Law and Analysis

### A. Petro-Valve's Motion to Compel

#### 1. Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rules 34 provides a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant as to Rule 34 in the time allowed, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### 2. Waiver of Objections

As a preliminary issue, the Court will address whether Bayou and the Footes waived their objections to the served requests for production by not responding within the 30 days allowed by Rule 34.

"[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989). "However, the court retains discretion to decline to compel production of requested documents when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made." *Cheshire v. Air Methods Corp.*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (citing cases); *see also Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 156 (S.D. Tex. 2009) ("[T]his Court has discretion to determine whether good cause exists to preclude waiver.")

Here, there is no dispute that Bayou and the Footes did not provide their responses to the requests for production within 30 days of being served. That said, the record indicates that Petro-Valve was not diligent in following up on those responses, holding a discovery conference, or filing a motion to compel regarding the tardy responses. It was not until April 5, 2017 – approximately 13 months after discovery requests were served on Bayou and approximately 10 months after discovery requests were served on the Footes – that the parties held a discovery conference regarding the underlying discovery requests. Since the service of discovery requests on Bayou on February 1, 2016, the Court has modified the discovery deadlines three times and the trial date twice. (R. Doc. 28; R. Doc. 34; R. Doc. 48).

Given the record, as well as the nature of the objections at issue (over breadth and relevance), the Court will consider the objections raised and will exercise its discretion in managing discovery to determine whether the requests at issue seek information that fall within the scope of discovery. *See* Fed. R. Civ. P. 26(b)-(c); *see Cheshire*, 2015 WL 7736649, at *2. The Court will now turn to the discovery requests at issue.

### 3. Requests for Production Directed at Bayou

Petro-Valve seeks an order requiring Bayou to respond to Request for Production Nos. 26, 27, 28, 29, 70, 71, 72, 73, 74, 75, 76, 79, and 80.

### i. Request Nos. 26, 27, and 28

Together, these requests seek production of all documents "reflecting payments made by [Bayou]" to the Footes and Kevin Barre, "including base payments, expense reimbursements, and commissions, from April 21, 2014 to the present date." Bayou objected to these requests on

the basis that "the information requested is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence."[2]

The Court will overrule Bayou's objections. The information sought is relevant to Petro-Valve's claim that it had the unilateral right to cancel the Consulting Agreement if the Footes became employees of Petro-Valve. The amounts received by the Footes from Bayou are relevant to the measure of damages resulting from the alleged taking and use of confidential information by the Footes at the time their employment terminated. The information requested during the time the Footes were employed by Petro-Valve (from on or about October 6, 2014 through on or about April 9, 2015) is also relevant to determining whether and to what extent the Footes violated their employment agreements, in which they agreed "not to have any other income or compensation from other industrial companies." (R. Doc. 14-1 at 3; R. Doc. 14-1 at 7). Finally, Bayou is seeking recovery of amounts allegedly due under the Consulting Agreement from April 21, 2014 through the end of the three-year contractual term (on or about April 21, 2017) and an additional six months (on or about October 21, 2017). Accordingly, the temporal scope of the requests are proportional to the damages sought by Bayou.

Given the issues at stake and the amount in controversy, the foregoing information is proportional to the needs of the case. The Joint Protective Order issued in this action addresses the need to protect any responsive documents identified as confidential from inappropriate disclosure or use outside of this litigation.

Based on the foregoing, the Court will require Bayou to provide all documents in its possession, custody, or control responsive to Request Nos. 26-28. By ordering these documents

---

[2] Rule 26 defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 further provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. Plaintiff's objections to information that is "not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence" is a reference to the previous version of this rule.

to be produced, the Court is not making a finding regarding the meaning of the contractual language at issue and/or the measure of damages in this action.

Based on the foregoing,

**IT IS ORDERED** that Bayou must provide supplemental responses to Request Nos. 26, 27, and 28 as detailed above within **10 calendar days** of the date of this Order.

### ii.  Request No. 29

This request seeks production of all documents reflecting the formation of Bayou, including but not limited to Articles of Incorporation, by-laws, and regulations. Bayou responded that it would produce responsive documents.

Petro-Valve raises no specific arguments detailing why and to what extent a supplemental production is required with regard to this Request for Production. Moreover, it does not appear that the parties discussed this particular request in their conferences. (*See* R. Doc. 35-10; R. Doc. 35-11 at 4-5; R. Doc. 35-6 at 8).

Accordingly,

**IT IS ORDERED** that the Motion to Compel is **DENIED** with regard to Request for Production No. 29 propounded on Bayou.

### iii.  Request Nos. 70, 71, 72, 73, 74, 75, 76, and 79

Together, Request Nos. 70-75 seek production of all documents reflecting sales and purchases made by Bayou between September 30, 2014 (the day after the cancellation of the Consulting Agreement) and the present date, including documents reflecting to whom the sale or purchase was made, the date of each sale or purchase, and the dollar amount of each sale or purchase; all documents reflecting Bayou's customers and vendors between September 30, 2014 and the present date; and all documents reflecting Bayou's income and expenses, and profits and losses, between September 30, 2014 and the present date. Similarly, Request No. 76 seeks a

copy of any Quickbooks or other financial software programs[3] used by Bayou between January 1, 2014 and the present date.  In response to each of these requests, Bayou produced responsive documents for the time period September 30, 2014 and April 9, 2015.  Bayou objected to the requests, however, to the extent they seek documents outside of that time frame on the basis that the information requested for those dates "is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence."[4]

Request No. 79 seeks production of all bank statements, including corresponding checks, deposit slips and wire transfer information from Bayou after January 1, 2014, to the present date. Bayou produced responsive documents between January 1, 2014 and June 30, 2015.  In its supplemental response, Bayou objected to the request to the extent it seeks documents after June 30, 2015 on the basis that the request is overly broad and "seeks information that is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence." (R. Doc. 39-5 at 9).

For many of the same reasons provided with regard to Request Nos. 26-28, the information sought by the foregoing requests is relevant to the claims and defenses in this action, and is proportional to the needs of the case.

---

[3] The Court assumes that the request seeks production of the actual files that are accessible through such programs and not the program itself.
[4] Bayou now argues that the requests are "simply unreasonable and disproportionate" to Petro-Valve's needs in this case. (R. Doc. 43 at 27).  The objections raised by Bayou with regard to specific requests for production do not raise that argument.  Bayou raised the issue of proportionality in its general objection to the requests "to the extent they are overly broad, oppressive, vague, and/or unduly burdensome." (R. Doc. 35-8 at 2).  A general objection to a request for production, however, is insufficient. *See* Fed. R. Civ. P. 34(b)(2)(B) ("For each item of category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.").  Regardless, Bayou provides no information in its opposition as to why the production of additional records in response to the requests would be unreasonable and disproportionate. That the parties were unable to reach a compromise on how to address the requests does not therefore require the conclusion that the requests must be limited.

First, Petro-Valve has raised claims against the Footes for the theft and misappropriation of trade secrets, including customer lists, and against the Footes and Bayou for conspiracy related to such alleged theft of trade secrets. (R. Doc. 14 at 10). The sales information, customer and vender lists, and other financial information sought by the foregoing requests are relevant to those claims, including the measure of damages and whether Bayou and the Footes misappropriated any customer and vendor lists in the first place. The requested information, including customer and vendor information, remains relevant after April 9, 2015, the date on which the Footes terminated their employment and filed this lawsuit, for the purpose of calculating damages resulting from the alleged misappropriation of trade secrets. Petro-Valve may ultimately demonstrate that Bayou and the Footes obtained additional customers and vendors after April 9, 2015, as a result of an expanded business network obtained from the misappropriation of Petro-Valve's customer and vendor lists.

Second, the financial information sought through Request No. 79 from the dates January 1, 2014 through September 30, 2014 also seeks relevant information. This time period, which includes approximately five months prior to the effective date of the Consulting Agreement, is relevant to Petro-Valve's claim that it was fraudulently induced into entering into the Consulting Agreement based upon the representations by Bayou and the Footes that they had the ability to bring in $15-$20 million a year in business from Louisiana customers.

Again, given the issues at stake and the amount in controversy, the information sought is proportional to the needs of the case. The time frames for the information sought is not overly broad. The Joint Protective Order issued in this action addresses the need to protect any responsive documents identified as confidential from inappropriate disclosure or use outside of this litigation.

Based on the foregoing,

**IT IS ORDERED** that Bayou must provide supplemental responses to Request Nos. 70, 71, 72, 73, 74, 75, 76, and 79 as detailed above within **10 calendar days** of the date of this Order.

### iv.    Request No. 80

Request No. 80 seeks production of all documents provided to any bank reflecting Bayou's financial condition or the value of Bayou's business from and after April 21, 2014 to the present date.  Bayou objected to this request on the basis that "the information requested is not relevant to these proceedings nor reasonably calculated to lead to the discovery of admissible evidence."

Bayou argues that this request "was not briefed" by Petro-Valve and "should be deemed waived." (R. Doc. 43 at 34).  Petro-Valve makes a few fleeting references to this request for production in its motion to compel. (R. Doc. 35-1 at 5, 13, 15, and 17).  Petro-Valve does not, however, specifically discuss how the information sought by Request No. 80 is relevant.

Regardless of the scant briefing regarding this particular request, the Court finds it to be vague and overly broad.  Furthermore, considering the other financial documents the Court is requiring Bayou to produce, the request is not proportional to the needs of this case.  The Court will not require Bayou to provide any responses to this particular request for production.

Based on the foregoing,

**IT IS ORDERED** that the Petro-Valve's Motion to Compel is **DENIED** with respect to Request No. 80.

### 4.    Requests for Production Directed at Keith Foote and David Foote

Petro-Valve seeks an order requiring the Footes to respond to Request for Production Nos. 1, 2, 15, 20, 29, 31, 32, 33, 34, and 36. (R. Doc. 35-1 at 8-11).

13

### i.    Requests Nos. 1 and 2

Together, these requests seek copies of the Footes' employment and nondisclosure agreements, including all drafts, modifications and amendments.  The Footes responded that they would provide documents in their possession.

Petro-Valve represents that no documents had been provided at the time the motion to compel was filed. (R. Doc. 35-1 at 8).  In opposition to the Motion to Compel, the Footes now assert that they have previously admitted that the versions of their employment and nondisclosure agreements in possession of Petro-Valve are "true and correct" copies of those documents, and that they have "no drafts of, modifications to, or amendments to the Consulting Agreement." (R. Doc. 43 at 34-35).

With respect to drafts, modifications, or amendments, these requests concern the Footes' employment and nondisclosure agreements, not the Consulting Agreement.  The requests, to which the Footes raised no objections, seek relevant information proportional to the needs of this case.

Finally, the Footes' responses, signed by counsel, indicated that they would be produced. The Court will order them to comply with that representation. To the extent the Footes have not done so, they must produce all documents responsive to these requests that are in their possession, custody, or control, including all copies of their employment agreements and nondisclosure agreements, including marginalia and comments, as well as drafts, modifications, and amendments.

Based on the foregoing,

**IT IS ORDERED** that the Keith Foote and David Foote must provide supplemental responses to Request Nos. 1 and 2 as detailed above within **10 calendar days** of the date of this Order.

### ii. Request No. 15

This request seeks production of all documents "reflecting payments made by Bayou" to the Footes, "including but not limited to base payments, expense reimbursements, commissions, salary, profit sharing, or other payments, between January 1, 2014 and the present date." The Footes objected to this request on the basis that "the information requested is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence."

For the same reasons the Court will require Bayou to respond fully to Request Nos. 26-28 directed at Bayou, the Court will require the Footes to respond fully to Request No. 15. To the extent a responsive production by Bayou satisfies this obligation, then the Footes may inform Petro-Valve that the documents in their possession, custody, and control have been produced by Bayou.

Based on the foregoing,

**IT IS ORDERED** that the Keith Foote and David Foote must provide supplemental responses to Request No. 15 as detailed above within **10 calendar days** of the date of this Order.

### iii. Request No. 20

This request seeks production of all documents reflecting the Footes' customers in Louisiana as of the present date. The Footes objected to this request on the basis that the "information requested is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence."

For the same reasons the Court will require Bayou to respond fully to Request No. 72 directed at Bayou, the Court will require the Footes to respond fully to Request No. 20. To the extent a responsive production by Bayou satisfies this obligation, then the Footes may inform Petro-Valve that the documents in their possession, custody, and control have been produced by Bayou.

Based on the foregoing,

**IT IS ORDERED** that the Keith Foote and David Foote must provide supplemental responses to Request No. 20 as detailed above within **10 calendar days** of the date of this Order.

### iv.    Request No. 29

This request seeks production of all documents reflecting sales made by Bayou or the Footes to current or former customers of Petro-Valve between September 30, 2014 and the present date.  The Footes responded that Bayou has already produced responsive documents between September 30, 2014 and April 9, 2015.  The Footes objected on the basis that each request is overly broad and "seeks information that is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence" to the extent each request seeks documents after April 9, 2015.

For the same reasons the Court will require Bayou to respond fully to Request No. 70 directed at Bayou, the Court will require the Footes to respond fully to Request No. 29.  To the extent a responsive production by Bayou satisfies this obligation, then the Footes may inform Petro-Valve that the documents in their possession, custody, and control have been produced by Bayou.

Based on the foregoing,

**IT IS ORDERED** that the Keith Foote and David Foote must provide supplemental responses to Request No. 29 as detailed above within **10 calendar days** of the date of this Order.

### v.    Request No. 31-33

Together, these requests seek production of the Footes' federal income tax returns for the years 2014, 2015, and 2016; the Footes' Schedule K-1, 1099, and W-2 forms issued to them between January 1, 2014 and the present date; and the Footes' bank statements, including corresponding checks, deposit slips, and wire transfers information, from and after September

30, 2014, to April 9, 2015. The Footes responded that Bayou produced its own income tax returns. Otherwise, the Footes objected on the basis that each request is overly broad and "seeks information that is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence."

The Footes filed a counterclaim against Petro-Valve seeking recovery of salary, commissions, and paid vacation time under their employment agreements. (R. Doc. 25). As an affirmative defense to that counterclaim, Petro-Valve asserts that the Footes breached their employment agreements by obtaining income or compensation from Bayou or another company while employed by Petro-Valve. (R. Doc. 29 at 2). The Footes were employed by Petro-Valve from on or about October 6, 2014 through on or about April 9, 2015. Accordingly, the Court finds the foregoing tax-related documents to be relevant for the years 2014 and 2015, and will require the Footes to produce the requested tax-related documents for those years.

Based on the foregoing,

**IT IS ORDERED** that the Keith Foote and David Foote must provide supplemental responses to Request No. 31-33 as detailed above within **10 calendar days** of the date of this Order.

### vi.      Request No. 34

This request is for production of all laptops used by the Footes from September 30, 2014 to April 9, 2015 "for business purposes, whether relating to the business of [Petro-Valve] or the business of [Bayou]." The Footes objected on the basis that the request is unduly vague, overly broad, and on the grounds that "information requested is not relevant to these proceedings nor reasonably calculated to lead the discovery of admissible evidence."

The Court agrees with the Footes that this request is overly broad. The request makes no attempt to limit the production to electronically stored information found within the laptops that

is relevant to the claims or defenses in this action. Petro-Valve has made no showing that a forensic inspection of the actual laptops used by the Footes is proportional to the needs of this case, particularly given the other information the Court will require the Footes and Bayou to produce.

Based on the foregoing,

**IT IS ORDERED** that the Petro-Valve's Motion to Compel is **DENIED** with respect to Request No. 34.

### vii.    Request No. 36

This request is for production of all documents reflecting "salary" that the Footes claim are owed to them from Petro-Valve, including backup documentation supporting the basis for their calculations. The Footes responded that they are not claiming any salary and that they are only claiming "paid time off" owed to them.

The Footes filed a counterclaim against Petro-Valve specifically seeking recovery "in the form of salary, commissions, and paid vacation time" under their employment agreements. (R. Doc. 25). Contrary to the Footes' objection, the counterclaim is not limited to seeking recovery for "paid time off" and specifically seeks recovery of "salary." This counterclaim has not been amended. Accordingly, the request for production seeks information within the scope of discovery. The Footes must provide a supplemental response producing all non-privileged responsive documents in their possession, custody, or control.

Based on the foregoing,

**IT IS ORDERED** that the Keith Foote and David Foote must provide supplemental responses to Request No. 36 as detailed above within **10 calendar days** of the date of this Order. In order to clear up any confusion created by the Footes' contrary positions, if they have

abandoned the portion of the counterclaim specifically seeking "salary," they may simply respond that there are no responsive documents to be produced for that reason.

### 5. Request for Reasonable Expenses

Petro-Valve seeks to recover reasonable expenses, including attorney's fees, pursuant to Rule 37(a)(5)(A), which requires the Court to award reasonable fees if a motion to compel is granted, unless certain exceptions or circumstances apply. Fed. R. Civ. P. 37(a)(5)(A).

The Court has denied Petro-Valve's motion in part. Petro-Valve moved the Court to compel the production of documents in response to certain requests for production propounded on Bayou that were insufficiently briefed. Moreover, Petro-Valve moved the Court to compel the production of documents in response to certain requests for production propounded on the Footes that were overly broad in scope. Under these circumstances, the Court may "apportion the reasonable expenses for the motion" after "giving an opportunity to be heard." Fed. R. Civ. P. 37(a)(5)(C).

Petro-Valve has submitted a declaration indicating that its attorney expended $4,900 in fees associated with this motion. (R. Doc. 35-13). Bayou and the Footes have been provided an opportunity to address the reasonableness of these fees. Having reviewed the correspondence between counsel, the arguments made by the parties, and the record as a whole, the Court finds it appropriate to order the parties to bear their own costs with regard to the instant Motion to Compel.

### B. Motion for Extension of Time to File Expert Reports

Petro-Valve seeks an extension of its deadline to provide expert reports until 21 days after documents are provided pursuant to the instant motion to compel. (R. Doc. 36). The two experts identified by Petro-Valve are Paul Price, an expert in computer/digital forensics, and Haran Levy, an expert CPA. (R. Doc. 42-1; R. Doc. 42-2).

Bayou and the Footes oppose the instant Motion for Extension on the basis that Petro-Valve waited until the eve of its expert report deadline to file its Motion to Compel, and on the actual expert report deadline to seek an extension of that deadline. (R. Doc. 42 at 5-8). Bayou and the Footes also oppose the Motion for Extension on the basis that Mr. Price has had sufficient information and time to prepare his report. (R. Doc. 42 at 3-5).

Rule 16(b)(4) of the Federal Rules of Civil Procedure allows for the modification of a scheduling order deadline upon a showing of good cause and with the judge's consent. The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). The Court consider four factors in determining whether to allow a party to submit an expert report beyond the deadline set in the Court's Scheduling Order: "(1) the explanation for the failure to submit a complete report on time; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (citing *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir. 1990)).

The Court finds good cause for granting an extension of the expert report deadline as requested, but not to the extent requested. Petro-Valve filed its Motion to Compel and Motion for Extension within the deadlines set by the Court, and as requested by the parties. While Petro-Valve certainly could have been more diligent in seeking discovery responses necessary for its expert reports, it nevertheless timely filed its Motion to Compel and Motion for Extension. Furthermore, as discussed above, Bayou and the Footes improperly withheld a large amount of information sought through the instant motion. The primary reason why Petro-Valve did not

have complete information to provide to its experts is the fact that Bayou and the Footes did not timely respond to discovery and, when they did, they objected to producing discoverable information. The importance of the expert testimony to be provided has not been questioned. Finally, given that the Court has extended the discovery deadline to July 14, 2017, Bayou and the Footes will have sufficient opportunity to depose Petro-Valve's experts after they provide their reports.

Given the deadlines in this action, and considering the fact that Petro-Valve waited until the very deadline to seek a court order pertaining to discovery requests filed approximately one year earlier, the Court will only provide Petro-Valve with 14 days after it is provided supplemental responses pursuant to this Order to provide its expert reports.

III. **Conclusion**

Based upon the foregoing,

**IT IS ORDERED** that Petro-Valve's Motion to Compel (R. Doc. 35) is **GRANTED IN PART and DENIED IN PART**. The parties shall bear their own costs. Bayou, Keith Foote, and David Foote shall provide supplemental responses to Petro-Valve's requests for production as detailed in this Order on or before June 26, 2017.

**IT IS FURTHER ORDERED** that Petro-Valve's Motion for Extension of Time to File Expert Reports (R. Doc. 36) is **GRANTED IN PART and DENIED IN PART**. The deadline for Petro-Valve to provide expert reports is extended to **14 calendar days** from the production of supplemental responses by Bayou, Keith Foote, and David Foote.

Signed in Baton Rouge, Louisiana, on June 16, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**