UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BAYOU INDUSTRIAL SALES, LLC          CIVIL ACTION

VERSUS

PETRO-VALVE, INC.          NO.: 15-00283-BAJ-RLB

### RULING AND ORDER

Before the Court is the **First Amended Motion for Summary Judgment (Doc. 64)** filed by Defendant Petro-Valve, Inc.[1] Also before the Court is the **Motion for Summary Judgment (Doc. 68)** filed by Plaintiff Bayou Industrial Sales, LLC ("Bayou") and the **Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 76)** filed by Defendant. For the following reasons, the **First Amended Motion for Summary Judgment (Doc. 64)** filed by Petro-Valve, and the **Motion for Summary Judgment (Doc. 68)** filed by Bayou are **GRANTED IN PART and DENIED IN PART**, and the **Motion to Strike (Doc. 76)** is **DENIED**.

I.     BACKGROUND

The following facts are undisputed unless otherwise noted. Petro-Valve distributes industrial valves, (Docs. 64-1 and 80-1 at ¶ 1), and Kevin Foote, David Foote, and Kevin Barre are sales representatives. *Id.* at ¶ 2. In early 2014, Petro-Valve began negotiating with the three salesmen to work for Petro-Valve in Louisiana. *Id.* at ¶ 3. As negotiations progressed, Petro-Valve's accountant

---

[1] The First Amended Motion for Summary Judgment (Doc. 64) supersedes a previously filed Motion for Interlocutory Summary Judgment filed by Petro-Valve. (Doc. 45).

1

suggested that Kevin Foote, David Foote, and Barre each form their own limited liability companies that would then become members of a single limited liability company that would contract with Petro-Valve. (Doc. 68 at ¶12 and Doc. 75 at ¶ 12). The accountant suggested this arrangement because it would allegedly offer favorable tax benefits. (Doc. 68-3 at 66:1-2).

On April 21, 2014, Bayou and Petro-Valve executed a consulting agreement (the "Contract"), in which Bayou agreed to provide "outside sales services" to Petro-Valve, for a base payment of $42,083.33 a month, which is $505,000 a year. (Doc. 64-3). Keith Foote testified that Petro-Valve and Bayou arrived at this figure based on a yearly salary of $200,000 for Kevin Foote, $180,000 for Barre, and $125,000 for David Foote. (Doc. 64-38 at 135:16:20).

Petro-Valve also agreed to pay Bayou a 10% commission, up to $1,500 a month for "entertainment," $1,000 a month for vehicle mileage/gas, $100 a month cell phone reimbursement, and $1000 a month for health insurance "per consultant." (Doc. 64-3 at p.1). The Contract, however, does not specify the number or identify of the consultants. *Id.* The Contract had a three-year term. *Id.* The Contract also contains two provisions relating to its termination:

- **Extended Payment for Services**: In the event this consulting agreement is terminated, consultant will receive 6 months of base payment. Should the consultant engage in a business that is a conflict of interest, the extended payment will cease.

- **Full Time Employment Status**: In the event this consulting agreement is terminated and full time employment status is offered, there will be no renegotiation of the base payment and commission rate as noted above.

2

*Id.* at p. 2

On May 2, 2014, Bayou filed amended articles of incorporation, identifying its members as David Foote Consulting, LLC, Keith Foote, LLC, and Barre Industrial Sales, LLC. (Doc. 68-1 and 75 at ¶ 26). A little over two months later, on July 9, 2014, Barre informed Petro-Valve that he was resigning from Bayou. *Id.* at ¶ 37. After that, Bayou invoiced Petro-Valve $27,083.34 a month for August, September and October of 2014, rather than the $42,083.33 a month the Contract provided. (Doc. 64-1 and 80-1 at ¶ 31). Bayou reduced the payment it invoiced Petro-Valve based on what Bayou had paid Barre each month. (Doc. 64-39 at 58:13:25). Petro-Valve paid these invoices. (Doc. 64-1 and 80-1 at ¶ 33).

On September 29, 2014, David Bash, a Petro-Valve manager, emailed David and Keith Foote, cancelling the Contract. (Doc. 64-12 at p. 1-2). He wrote that it "should have been cancelled when [Barre] departed" and that "[t]he new employment agreement we have been discussing will be effective today, upon cancellation of the [contract]." *Id.* at p. 1. David Foote responded that if Petro-Valve wanted "to modify the Contract and eliminate Barre's portion from the Contract and keep the rest of the plan in place . . . we would be willing to sign that[.]" *Id.* at p. 1.

Ultimately, rather than modify the Contract, Kevin and David Foote became Petro-Valve employees. On October 6, 2014, Kevin and David Foote signed employment agreements with Petro-Valve, and the agreements were back-dated to October 1, 2014. (Docs. 64-16 and 64-17) Keith Foote's yearly salary under the employment agreement was $200,000.00 and David Foote's salary was $125,000.00.

3

*Id.* Like the Contract, the commission rate was 10% and the agreement provided for expense reimbursements for entertainment of up to $1500 per month, mileage/gas up to $1000 per month, cell phone up to $100 per month, as well as $1000 per month for health insurance. *Id.* Kevin and David Foote worked for Petro-Valve until April 9, 2015. (Docs. 64-1 and 80 at ¶ 65).[2]

Bayou claims that Petro-Valve is liable for: (1) $1,289,280.32 in unpaid base payments for the remaining three years on the Contract; (2) another six months of base payments totaling $252,499.98 because Bayou did not engage in business that was a conflict of interest; (3) $44,999.97 in unpaid base payments for the period between April 21, 2014 (the effective date of the contract) and September 29, 2014 (the date Petro-Valve terminated the contract); and (4) $62,000 in health insurance premiums. (Doc. 60 at ¶ 11-14).

Plaintiffs filed suit in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana on April 9, 2015. (Doc. 1-2). Invoking the Court's diversity jurisdiction, Petro-Valve removed the case on May 3, 2015. (Doc. 1).[3]

---

[2] The parties do not specify whether Kevin and David Foote resigned or were terminated. (Docs. 64-1 and 80 at ¶ 65).

[3] On November 6, 2016, Defendant filed a counterclaim against Plaintiff and a third-party demand against Keith Foote and David Foote for fraud, theft and misappropriation, and conspiracy. (Doc. 14). Keith Foote and David Foote then filed a counterclaim against Petro-Valve for salary, commissions, and paid vacation time allegedly due to them under the terms of their employment. (Doc. 25). On February 19, 2017, the Court granted Bayou, Petro-Valve, Keith Foote, and David Foote's Joint Motion to Dismiss the counterclaims and third-party demands because the parties agreed to dismiss these claims with prejudice. (Doc. 58). Bayou's breach of contract claims are therefore the only remaining claims in this case.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted).

In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir.1994)). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. On the other hand, the non-movant's burden is not satisfied merely upon a showing of "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III. DISCUSSION

Before addressing the merits of the cross-motions for summary judgment, the Court will address Petro-Valve's Motion to Strike twenty-three paragraphs contained in Keith and David Foote's declarations.[4] (Doc. 76-1).

*First*, Petro-Valve objects to seventeen paragraphs in the declarations because they purportedly contain self-serving or argumentative statements. (Doc. 76-1 at p. 3-5). The United States Court of Appeals for the Fifth Circuit has held that "[a] party's own testimony is often self-serving, but we do not exclude it as incompetent for that reason alone." *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (internal quotations omitted). Indeed, as long as an affidavit is based on personal knowledge, contains factual assertions, and meets the

---

[4] Following the 2010 amendments to Rule 56, a motion to strike is no longer the proper means to attack the admissibility of summary judgment evidence; instead, the party may simply object to the material. *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012). Petro-Valve's Motion to Strike will therefore be treated as an objection.

usual requirements for admissibility, it may contain self-serving and argumentative statements. *See id.* Therefore, Petro-Valve's objection that certain evidence is self-serving and argumentative is overruled.

*Second*, Petro-Valve claims that sixteen paragraphs in the declarations are not credible or that they contain contradictory statements. (Doc. 76-1 at p. 3-5). On a motion for summary judgment, courts do not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *See Grogan v. Kumar*, 873 F.3d 273, 275 (5th Cir. 2017). It is therefore improper to object to summary judgment evidence on the grounds that it is not credible. *See id.* Petro-Valve's objection that certain evidence is not credible and contradictory is overruled.

*Third*, Petro-Valve argues that four paragraphs in the declarations describe evidence that speaks for itself. (Doc. 76-1 at p. 3-5). This is not an appropriate objection. *See Miller v. Holzmann*, 240 F.R.D. 1, 4 (D.D.C. 2006); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 532 (S.D.W. Va. 2007). Therefore, the objection is overruled.

*Fourth*, Petro-Valve argues that seven paragraphs contain hearsay. (Doc. 76-1 at p. 3-5). It is not enough, however, to argue that evidence, in the form in which it is presented at summary judgment, contains hearsay and it should therefore be excluded. A party can only object to evidence at the summary judgment stage if it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c). Petro-Valve provides no authority to suggest that any of the six paragraphs it

objects to on hearsay grounds cannot be presented in an admissible form at trial. Therefore, the hearsay objection is overruled.

*Fifth*, Petro-Valve argues that eighteen paragraphs in the declarations contain conclusory statements. (Doc. 76-1 at p. 2-5). "Ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion." *Cutting Underwater*, 671 F.3d at 515 (internal quotation omitted). However, after reviewing the eighteen paragraphs to which Petro-Valve objects, the Court finds that they each contain specific factual allegations which do not constitute conclusory facts or conclusions of law. Therefore, this objection is overruled.

*Sixth*, Petro-Valve claims that several paragraphs contain impermissible parol evidence. (Doc. 76-1 at p. 2-5). Parol or extrinsic evidence is admissible only when a contract is susceptible to more than one interpretation. *Willard v. R & B Falcon Drilling USA, Inc.*, 836 So. 2d 424, 428 (La. Ct. App. 2002), and such evidence consists of "the nature of the Contract, equity, usages, the conduct of the parties before and after the formation of the Contract, and other contracts of a like nature between the same parties." *Id.* (citing La. Civ. Code. art. 2053). The Court will address Petro-Valve's arguments concerning parol evidence *infra* at III(A). Therefore, the Motion to Strike is denied.

### A. Whether Petro-Valve is Entitled to $1,289,280.32 in Base Payments for the Remaining Three Years of the Contract

Bayou claims that Petro-Valve owes it base payments from the date Petro-Valve cancelled the Contract (September 29, 2014) to the end date of the Contract (April 21, 2017). (Doc. 60 at ¶ 12). Bayou claims that these payments total

$1,289,280.32. *Id.* Petro-Valve argues that it terminated the Contract in accordance with the "Full Time Employment Status" provision in the Contract. (Doc. 69 at p. 15). It argues that this provision provides that if Petro-Valve offered Bayou's members full time employment on the same terms as the Contract, it need not continue paying Bayou. *Id.* at p. 8-16. On the other hand, Bayou argues that the provision does not permit either party to cancel the Contract before the three year term of the Contract expires, but rather that the Contract provides that if Petro-Valve offered Bayou full time employment after three years, Bayou would be compensated on the same terms as the Contract. (Doc. 80 at p. 14).

To interpret the "Full Time Employment Status" provision, the Court must start with an examination of the plain text of the Contract. *See* La. Civ. Code. art. 2046. Under Louisiana law "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* If, however, after examining the four corners of the Contract, any ambiguity remains the Court may consider parol evidence. *Amoco Prod. Co. v. Fina Oil & Chem. Co.*, 670 So. 2d 502, 511 (La. Ct. App. 1996). An ambiguous provision "must be interpreted in light of the nature of the Contract, equity, usages, the conduct of the parties before and after the formation of the Contract, and other contracts of a like nature between the same parties." *Id.* (citing La. Civ. Code. art. 2053).

Here, the provision at issue states that "[i]n the event this consulting agreement is terminated and full time employment status is offered, there will be no

9

renegotiation of the base payment and commission rate as noted above." (Doc. 64-3 at p. 2). This provision is ambiguous because it leaves several crucial questions unanswered. It does not make clear who may terminate the Contract. Nor does it indicate who must offer full time employment, and to whom it must be offered. It also fails to expressly indicate whether Petro-Valve must continue paying Bayou if the Contract is terminated.

Based on the course of conduct of the parties before and after the formation of the Contract, the Court finds that the parties contemplated that Petro-Valve might offer employment to Kevin Foote, David Foote, and Barre. Indeed, in early 2014, Petro-Valve began negotiating with these three salesmen about becoming "outside sales representatives" for Petro-Valve. (Docs. 64-1 and 80-1 at ¶ 3). As negotiations progressed, Petro-Valve's accountant suggested that the three form their own limited liability companies who would then become members of a single limited liability company that would contract with Petro Valve. (Doc. 68 and Doc. 75 at ¶ 12). And that is exactly what happened. The three salesmen each formed an LLC that became a member of Bayou. (Doc. 64-33 at p. 3). Therefore, the Court concludes that the parties intended for the "Full Time Employment Status" provision to apply if Petro-Valve offered employment to the then members of Bayou.

The Court also concludes that both parties had the right to terminate the Contract. Bayou argues that neither party was permitted to terminate the Contract before the end of the three year contract term. (Doc. 80 at p. 13). A plain reading of the Contract suggests otherwise. The Contract includes the phrase: "[i]n the event

the Contract is terminated." (Doc. 64-3 at p. 2). The phrase is a conditional statement, which indicates that the Contract could be terminated by either party. There would be no need to include this phrase if the Contract could not be terminated whatsoever.

The Court also concludes that either party could terminate the contract before the three year term of the Contract expired. If the parties intended for the "Full Time Employment Status" provision to apply only after the three year term in the Contract expired, the Contract would have manifestly provided so, (*e.g.*, if after the three year term in the Contract expires, and full time employment status is offered, there will be no renegotiation of the base payment and commission rate as noted above.) Petro-Valve also argues that interpreting the Contract this way renders the three year term meaningless. (Doc. 80 at p. 14). Not so. The three year term contained in the Contract is the maximum length of the Contract. It instructs that the Contract would continue for three years from the date it was executed unless either party terminated that Contract before three years. The Court therefore finds that either party had the power to terminate the Contract before the three year maximum term of the Contract expired.

Finally, the Court concludes that the Contract provided that if Petro-Valve offered the members of Bayou employment, Petro-Valve need not continue paying Bayou under the Contract. The Court finds that this is the appropriate interpretation of the Contract, when the "Full Time Employment Status" provision is viewed in context with the other provision contained in the Contract that relates to the

Contract's termination. *See* La. Civ. Code art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."). That provision instructs that "[i]n the event this consulting agreement is terminated, consultant will receive 6 months of base payment. Should the consultant engage in a business that is a conflict of interest, the extended payment will cease." (Doc. 62-3 at p. 2).

This provision specifically states that if the Contract is terminated, the consultants will receive six months of pay. *Id.* By contrast, the "Full Time Employment Status" provision does not indicate that if the members of Bayou are offered full time employment that they will or will not receive any further base payments. This indicates that the parties were aware how to include a provision that required Petro-Valve to continue paying Bayou after the Contract was terminated, but that they chose not to include such a provision in the provision that dealt with the termination of the Contract if Petro-Valve offered Bayou's members employment. Therefore, the Court concludes that if the members of Bayou were offered full time employment by Petro-Valve at the same terms as the Contract, Petro-Valve need not continue paying Bayou.

Now that the Court has determined the meaning of the "Full Time Employment Status" provision, the Court must determine whether Petro-Valve adhered to it. Here, the evidence taken in the light most favorable to Bayou reflects that Petro-Valve offered Kevin and David Foote full time employment on the same terms as the Contract when Petro-Valve terminated the Contract. On September 29,

2014, David Bash, a Petro-Valve manager, emailed David and Keith Foote to cancel the Contract. (Doc. 64-12).[5] Petro-Valve then offered Keith and David Foote jobs at Petro-Valve, and they signed an employment agreement. (Docs. 64-16 and 64-17). The employment agreements were at the same terms as the sales contract. Indeed, the commission rate remained at 10% and Keith and David Foote received the same expense reimbursements. *Id.* Kevin Foote's salary under the employment agreement was $200,000 annually, and David Foote's salary was $125,000. *Id.* These salaries reflect the proportion of the sales contract attributable to each of them. (Doc. 64-38 at 135:16:20). Accordingly, Petro-Valve is not liable for $1,289,280.32 in base payments.[6]

### B. Whether Petro-Valve is Liable for $252,499.98 Because Bayou Did Not Engage in Business That Was a Conflict of Interest

Bayou also argues that Petro-Valve is liable for six months of base payments totaling $252,499.98 because Petro-Valve terminated the contract. (Doc. 60 at ¶ 14). The Contract's "Extended Payment for Services" provision provides that: "[i]n the event this consulting agreement is terminated, consultant will receive 6 months of base payment. Should the consultant engage in a business that is a conflict of interest, the extended payment will cease. (Doc. 64-3 at p. 2). Petro-Valve argues that taking into account the fact that the "Full Time Employment Status" provision

---

[5] Bayou argues that "cancel" and "terminate" have different meanings. This is true in the context of insurance policies. *Anderson v. Ichinose*, 760 So. 2d 302, 307 (La. 1999). In the context of the Contract at issue here, however, the terms are synonymous.

[6] For the same reasons, Petro-Valve need not pay Bayou $62,000 in health insurance premiums for the remaining three years of the contract.

contemplates maintaining the base payment in the form of employment compensation, the reasonable interpretation of the two provisions is that if employment is offered, there is no severance payment of six months of base payments. (Doc. 69 at p. 19-20).

To interpret the "Extended Payment for Services" provision, the Court must start with the plain text of the Contract. *See* La. Civ. Code. art. 2046. Under Louisiana law "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. A court may only consider extrinsic evidence when a contract is ambiguous. *Amoco*, 670 So. 2d at 511.

Here, the Contract is free from doubt. It provides that "[i]n the event this consulting agreement is terminated, consultant will receive 6 months of base payment. (Doc. 64-3 at p. 2). Bayou is the consultant under the contract. *See id.* Therefore, the Contract means what it says: if Petro-Valve terminates the contract, Bayou receives six months of base payments. The Court need not go beyond the text of the Contract in search of the parties' intent. The provision contains only one exception, which states that "[s]hould the consultant engage in a business that is a conflict of interest, the extended payment will cease." (Doc. 64-3 at p. 2). Petro-Valve argues that Keith and David Foote engaged in business that was a conflict of interest because they sold industrial valve products to current or former customers, suppliers and vendors of Petro-Valve. (Doc. 69 at p. 20). However, Petro-Valve does not even

claim that this occurred until Keith and David Foote left Petro-Valve on April 9, 2015, *Id.*, which is six months and eleven days after Petro-Valve terminated the Contract.

The conflict of interest provision provides that base payments will "cease" if Bayou engaged in business that was a conflict of interest. The only reasonable interpretation of this provision is that six months of base payments would end once Bayou engaged in business that was a conflict of interest. Even if it's true that Keith and David Foote engaged in business that was a conflict of interest, this occurred over six months after the Contract was terminated. Therefore, even taking the evidence in the light most favorable to Petro-Valve, it is liable for six months of base payments.

Keith and David Foote's employment agreements also do not supersede or operate as a novation of the conflict of interest provision. Novation is the extinguishment of an existing obligation by the substitution of a new one. La. C.C. art. 1879. The intention to extinguish the original obligation must be clear and unequivocal; novation may not be presumed. La. C.C. art. 1880. The burden of proof for establishing novation is on the person who asserts it. *Scott v. Bank of Coushatta*, 512 So.2d 356 (La. 1987). But here, the employment agreements do not reference the consulting Contract whatsoever, (Docs. 64-16 and 64-17), nor does the intent of the parties otherwise indicate that the employment agreements were intended to replace the Contract.

No doubt, this may seem like a harsh result because Keith and David Foote were hired by Petro-Valve after it terminated the Contract, but "[i]t is not the province of the courts to relieve a party of a bad bargain, no matter how harsh."

15

*Hymel v. Eagle*, Inc., 7 So. 3d 1249, 1253 (La. Ct. App. 2009); *Maloney v. Oak Builders, Inc.*, 235 So. 2d 386, 390 (1970).[7] Therefore, Bayou's Motion for Summary Judgment on its claim for $252,499.98 is granted.

### C. Whether Petro-Valve is Liable for $44,999.97 in Base Payments from September 29, 2014 to April 21, 2017

Bayou claims that Petro-Valve owes it $44,999.97 in base payments for August, September, and October of 2014. (Doc. 60 at ¶ 11). The relevant facts are largely undisputed. After Barre resigned from Bayou, Bayou invoiced Petro-Valve $27,083.34 a month for August through October of 2014, rather than $42,083.33, provided in the Contract. (Doc. 64-1 and 80-1 at ¶ 31 at ¶ 31). Petro-Valve claims that Bayou reduced the base payment proportionally based on what Bayou had paid Barre each month. (Doc. 64-39 at 58:13:25). Bayou claims that it reduced the monthly base payments to "thwart growing tension between Bayou and Petro-Valve" because Petro-Valve insisted that David and Kevin Foote become employees of Petro-Valve. (Doc. 80-9 at ¶ 14).

Whatever the reason, it is undisputed that the Contract states that the "[p]ayment will be processed from Bayou Industrial Sales, LLC's invoice. Base payment is to be paid within 5 business days of invoice (invoice should be submitted on or after the 1st business day of the subsequent month[)]." (Doc. 64-3 at p. 1). Both parties also agree that Bayou never invoiced Petro-Valve for the amounts that it now

---

[7] The Court notes that the one-and-a-half page Contract is poorly drafted and appears to have been hastily drafted without the assistance of experienced counsel. This entire litigation likely could have been avoided had a more thorough contract been drafted. This will likely be a hard lesson to both parties to do so in the future.

16

seeks to collect. (Doc. 64-1 and 80-1 at ¶ 31). Instead, Bayou invoiced Petro-Valve for a reduced amount, which Petro-Valve paid. (Doc. 64-1 at ¶ 33 and 80-1 at ¶ 33). Therefore, by the plain terms of the Contract, Petro-Valve is not liable for $44,999.97 in base payments for August, September, and October of 2014 because Bayou never invoiced Petro-Valve for this amount.[8]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Interlocutory Summary Judgment (Doc. 45)** filed by Petro-Valve is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the **First Amended Motion for Summary Judgment (Doc. 64)** filed by Petro-Valve is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Doc. 68)** filed by Bayou is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the **Motion to Strike (Doc. 76)** is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Leave to File Reply Memorandum and to Exceed the Five Page Limit (Doc. 89)** is **GRANTED**.

---

[8] It is also far too late for Bayou to invoice Petro-Valve for these base payments (over three years later) because the Contract states that the "invoice should be submitted on or after the 1st business day of the subsequent month." (Doc. 64-3 at p. 1).

**IT IS ORDERED, ADJUDGED, AND DECREED** that Judgment is entered in favor of Bayou Industrial Sales, LLC and against Petro-Valve, Inc. in the amount of $252,499.98.

Baton Rouge, Louisiana, this 7th day of November, 2017.

_____
**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**